OPINION
In April 2001, Christopher J. Kutys was charged with one count of "littering," a third-degree misdemeanor, in violation of R.C. 3767.32(A). The facts giving rise to the charge are relatively few and, in all pertinent respects, not in dispute here.
On March 15, 2001, Mr. Kutys was employed as a delivery driver for a Columbus business, Mr. Mulch. On that day, Kutys was fueling a truck at the company property's fueling station when he realized that the gasoline-powered truck was being filled instead with diesel fuel. Upon this realization, he stopped fueling and began draining the diesel fuel from the truck into a two-gallon bucket. Since he ultimately needed to drain approximately ten gallons of fuel, the bucket was obviously too small. He then used a fifteen-gallon trash can until all the diesel was drained. According to Kutys, he placed the trash can of diesel fuel, "for later use," near the tanks at the company's fueling station.
At some point during this draining process, some of the diesel fuel was spilled into a storm sewer drain near the company's fueling station. Eventually, the fuel was carried into a nearby creek or lake ("waters of the state" in the vernacular of the statute at issue here). The creek was located near a neighboring branch of the United States Post Office. When employees of the post office reported an unusual odor and a "sheen" on the water, governmental agencies responded and eventually traced the "spill" to the incident at Mr. Mulch's. The owner of Mr. Mulch worked with the governmental agencies, including the Environmental Protection Agency, to rectify the spill. Soon thereafter, Mr. Kutys was cited for littering.
Mr. Kutys' case was assigned to the Environmental Judge of the Franklin County Municipal Court. In October 2001, defense counsel filed motions seeking dismissal of the littering charge contending, inter alia, that the littering statute at issue is unconstitutional. The judge overruled the motions pursuant to a decision filed November 3, 2001.
Following the unsuccessful constitutional challenge, Mr. Kutys entered a plea of "no contest" to the littering charge. The trial court accepted the plea and found him guilty.
The trial court sentenced Mr. Kutys to 30 days in jail, all of which were suspended; placed him on one year of probation; ordered him to complete 80 hours of community service; fined him $250; and, ordered him to pay court costs. The trial court granted defense counsel's motion to stay the sentence pending the instant appeal.
Christopher J. Kutys ("appellant") has timely appealed the trial court's rejection of his constitutional challenge, assigning a single error for our consideration:
 The defendant-appellant was denied due process of law under the Fourteenth Amendment * * * [to] the United States Constitution.
By its terms, subsection (A) of R.C. 3767.32 is a strict liability offense.[1] The statute reads, in pertinent part:
 No person, regardless of intent, shall deposit litter or cause litter to be deposited on any public property, on private property not owned by him, or in or on waters of the state * * *. [Emphasis added.]
The statute defines "litter" as meaning, in toto, "garbage, trash, waste, rubbish, ashes, cans, bottles, wire, paper, cartons, boxes, automobile parts, furniture, glass, or anything else of an unsightly or unsanitary nature." [Emphasis added]; R.C. 3767.32(D)(1).
As indicated infra, appellant's assignment of error challenges this portion of the littering statute[2] on constitutional grounds. It is well-settled that we review such issues de novo.
Preliminarily, we note the well-established rule of statutory construction that legislative enactments generally enjoy a presumption of constitutionality. R.C. 1.47(A). In addition, legislation also enjoys presumptions that it is "intended to be effective; * * * [that] a just and reasonable result is intended; * * * [and a] result feasible of execution is intended." R.C. 1.47(B), (C), and (D).
Appellant's assignment of error raises a fairly narrow issue. He contends that the littering statute set forth above is unconstitutional because it fails to define the term "litter" in such a way that a person of ordinary intelligence would have fair notice that conduct such as appellant's would be considered "criminal." Thus, appellant submits, the statute is unconstitutionally vague and, therefore, violative of his constitutional rights to due process of law. However, in contrast to arguing the broader theory that the statute is unconstitutionally vague "on its face," appellant advances a far more limited theory that the statute is unconstitutional "as applied" to his conduct in particular. Specifically, the purportedly vague definition of "litter" does not apply to his "inadvertent act" since diesel fuel, or any other "liquid" substance, is not specifically included in the list of items delineated as "litter" in the statute.
We first note that with respect to the purported "inadvertence" of appellant's actions, the unintentional nature of appellant's conduct, while perhaps unfortunate, is frankly immaterial. As indicated above, and as appellant does concede, an offender's intent (or lack thereof) is, again by definition, generally of no consequence under strict liability statutes.
The trial court undertook a very thorough examination of appellant's argument, including a careful analysis of the appropriate definition of "litter" in the absence of the specific inclusion of "diesel fuel" or the like.
First, in considering the so-called "catch-all" provision of the definitional section of "litter" (the stated term "or anything else of an unsightly or unsanitary nature"), the court looked to State v. Aspell (1967), 10 Ohio St.2d 1, paragraph two of the syllabus:
 Under the rule of ejusdem generis, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader significance is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms. [Emphasis added.]
Guided by Aspell, the trial court concurred with the initial portion of appellant's argument that the definitional section of the statute should, in essence, be construed narrowly, so as to not encompass diesel fuel within the "term having perhaps a broader significance." In other words, the trial court agreed that the broad, catch-all "item" defined as litter, "anything else of an unsightly or unsanitary nature," could not be invoked to include diesel fuel, given its dissimilarity to the preceding "particular class of objects having well-known and definite features * * *." Appellant argued, as he does here, that diesel fuel should not be deemed "litter" given its dissimilarity to the preceding "non-liquid" items.
The trial court acknowledged that diesel fuel is indeed dissimilar to the preceding "non-liquid" categories. However, the trial court, guided by the above-emphasized language of Aspell, examined the littering statute in its entirety in an effort to ascertain the legislative intent in determining whether diesel fuel should be considered "litter." The court ultimately concluded that the diesel fuel which eventually culminated into a spill amounted to "waste," an item specifically included in the definitional section of the statute.
In reaching this conclusion, the trial court observed that one of the "exceptions" or "affirmative defenses" set forth in this portion of the littering statute, R.C. 3767.32(A)(3), makes reference to both R.C. Chapter 3734 ("solid and hazardous waste") and R.C. Chapter 6111 ("water pollution control"). The trial court looked to both chapters' definitional sections in an effort to ascertain the legislative intent underlying the littering statute. Appellant agrees that both chapters "give insight regarding the legislative intent of the state's definition of waste." (Brief of appellant at 2.)
The trial court correctly noted that while neither chapter defines "waste" in general, "liquid substances are considered a component of `industrial waste' and `hazardous waste.'" (Decision at 6.)
Appellant raises two very specific reasons as to why the diesel fuel should not have been deemed "waste" by the trial court. First, diesel fuel is not specifically listed in any of the aforementioned statutes. This argument is not well-taken. The trial court did not err in construing "waste" to include diesel fuel, notwithstanding the lack of its particularized inclusion in the various statutory lists. Appellant has not directed our attention to any authority for the proposition that these lists or itemizations of what constitutes "waste" must necessarily be wholly exhaustive, particularly where, as here, common sense dictates otherwise. While appellant's own "common sense" is not at issue in a strict liability situation, it simply defies common sense to find that gallons of fuel spilled into a body of water to the extent that the fuel caused both an odor and a "sheen" (and the Environmental Protection Agency's involvement to rectify the "spill") should not be considered "litter" for purposes of this statute.
Finally, appellant argues that the diesel fuel should not be considered "waste," or even "unwanted or undesired," because he intended to "salvage" the diesel fuel for "future use." While appellant indeed may have intended to salvage the fuel, he nonetheless set in motion actions which led to the spill of fuel into state waters.
To reiterate, notwithstanding appellant's intentions, he was cited for violating that portion of the statute which holds an offender strictly liable for littering. By definition, as a strict liability offense, R.C.3767.32(A) penalizes offenders "regardless of intent."
As applied to appellant's conduct in the instant case, we agree with the trial court's reasonable construction of the littering statute. Under the circumstances, the trial court correctly determined that the diesel fuel should be encompassed within the definition of "litter" because it was "waste."
The assignment of error is overruled.
Having overruled the assignment of error, the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE and BRYANT, JJ., concur.
[1] While this provision of the littering statute does allow three exceptions, essentially affirmative defenses, none apply directly to appellant in the instant case. However, as addressed herein, portions of this language of the statute are instructive in our analysis of the issue presented.
[2] For purposes of comparison and edification only, we note that while subsection (A) is a strict liability offense, subsection (B) prohibits a different manner of littering and requires a culpable mental state of "knowingly."